NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
SHANGHAI
BOSTON
HOUSTON
LOS ANGELES
HANOI
HO CHI MINH CITY

# Duane Morris®

*FIRM and AFFILIATE OFFICES*

ANDREW T. HAHN, SR.
DIRECT DIAL: 212-692-1066
PERSONAL FAX: +1 212 208 2521
*E-MAIL:* athahn@duanemorris.com

*www.duanemorris.com*

ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE*
*OF DUANE MORRIS*

MEXICO CITY
ALLIANCE WITH
MIRANDA & ESTAVILLO
SRI LANKA
ALLIANCE WITH
GOWERS INTERNATIONAL

January 29, 2015

**VIA ECF AND REGULAR MAIL**

The Honorable Paul G. Gardephe
United States District Judge
United States District Court - Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York NY 10007-1312

Re: **mind/SHIFT Technologies, Inc. v. Peter Oettinger, No. 14-cv-07555 (PGG)**

Dear Judge Gardephe:

Plaintiff, mindSHIFT Technologies, Inc. ("mindSHIFT"), and Defendant, Peter Oettinger ("Oettinger") jointly submit this letter in advance of the initial pretrial conference scheduled for Thursday, February 5, 2015 at 10:45 a.m. Additionally, counsel jointly submit the attached Case Management Plan.

**I.     Brief Description of the Case**

**A.     Plaintiff's Description of Claims**

mindSHIFT, among other things, provides managed and professional information technology services, systems, software and hardware to run computer and document management systems for its clientele. Oettinger was a former Managing Director of Legal Professional Services for mindSHIFT.

Oettinger previously worked for Union Square Technology Group LLC. In June 2005, mindSHIFT purchased the assets of Union Square for approximately $13 million. The Asset Purchase Agreement specifically listed as an included asset the Master Services Agreement between mindSHIFT and Herrick, Feinstein LLP.

DUANE MORRIS LLP

1540 BROADWAY     NEW YORK, NY 10036-4086                               PHONE: +1 212 692 1000   FAX: +1 212 692 1020

DuaneMorris

The Honorable Paul G. Gardephe
January 29, 2015
Page 2

After the Asset Purchase Agreement closed, Oettinger accepted a position at mindSHIFT. In connection with his new employment, Oettinger entered a Noncompetition, Confidentiality and Nonsolicitation Agreement (the "Covenant Agreement"). The Covenant Agreement contained a six month non-competition provision, a one year non-solicitation provision, and confidentiality obligations for Oettinger after the termination of his employment with mindSHIFT. Oettinger resigned from mindSHIFT in August 2013.

In April 2014, mindSHIFT filed suit against two other former mindSHIFT employees, Joel Altobello and Patrick Sklodowski, and a new entity, Square 10 Solutions LLC, that they had formed (the "Square 10 Litigation"). mindSHIFT alleged that Altobello and Sklodowski, among other things, had misappropriated confidential information. mindSHIFT also alleged that Sklodowski had violated his noncompetition and nonsolicitation obligations at the invitation of Altobello. The Delaware Court of Chancery entered a Temporary Restraining Order, and later a Preliminary Injunction, against Altobello, Sklodowski and Square 10.

During discovery in the Square 10 Litigation, mindSHIFT learned that Oettinger, too, had been a principal in Square 10. Further, mindSHIFT learned that Oettinger had been meeting with one of mindSHIFT's largest clients to solicit its business throughout his non-competition and non-solicitation periods. Ultimately, Oettinger and the Square 10 Litigation Defendants successfully lured away this significant client. After the TRO was entered, Oettinger resigned from Square 10 and began working directly for the client.

mindSHIFT alleges that Oettinger breached his non-competition and non-solicitation obligations. Further, mindSHIFT alleges that Oettinger breached his duty of loyalty and misappropriated confidential mindSHIFT information and tortiously interfered with mindSHIFT's relationships. In mindSHIFT's view, the factual basis for these claims has already been established by admissions from the Square 10 Litigation Defendants and other non-party witnesses.

### B.  Defendant Peter Oettinger's Defense

Mr. Oettinger provides information technology services for medium and large size law firms. In 2000, Mr. Oettinger began working in New York for Aspire.net Managed Systems, Inc. ("Aspire"). In 2001, while at Aspire, Mr. Oettinger developed a relationship with Herrick Feinstein, LLP, a New York based law firm. Mr. Oettinger was the architect of Herrick Feinstein's network infrastructure and handled the day-to-day management of its network systems on an outsource basis.

Mr. Oettinger, along with other Aspire employees (including Joel Altobello who was one of the owners of Aspire), brought the Herrick Feinstein relationship to mindSHIFT in 2005 when mindSHIFT purchased the assets of Aspire (as well as the assets of Union Square Technology Group LLC). Once Aspire was purchased by mindSHIFT, Mr. Oettinger was advised by Herrick

DuaneMorris

The Honorable Paul G. Gardephe
January 29, 2015
Page 3

Feinstein that it agreed to remain a client of mindSHIFT only if the Aspire senior management team (including Mr. Oettinger) continued to service Herrick Feinstein's account in New York.

In August 2013, Mr. Oettinger left mindSHIFT. In March 2014 (after Mr. Oettinger's noncompetition period had expired), Mr. Oettinger became a member of Square 10, a new entity formed with Mr. Altobello and Mr. Sklodowski. One month later, Mr. Oettinger resigned from Square 10 and began working in house for Herrick Feinstein (neither competing against mindSHIFT nor soliciting any mindSHIFT business).[1]

Inasmuch as Mr. Oettinger had a pre-existing relationship with Herrick Feinstein (dating back to 2001), the restrictive covenants contained in his employment agreement are unenforceable, since mindSHIFT does not have a legitimate, protectable interest in someone else's relationship. In addition, New York law does not view working in house for a client (i.e. Herrick Feinstein) as competing against one's former employer (i.e., mindSHIFT).

Moreover, mindSHIFT has no recoverable damages against Mr. Oettinger since Herrick Feinstein testified during discovery in the Square 10 Litigation that it chose to end its contractual relationship with mindSHIFT because of mindSHIFT's poor performance, not because of anything Mr. Oettinger might have done. Indeed, Mr. Oettinger maintains that mindSHIFT is simply using its financial resources to try and prevent lawful competition, or in Mr. Oettinger's case conduct that does not even amount to competition.

Finally, since Mr. Oettinger anticipates that he will be the prevailing party in this action, he will seek to recover his reasonable attorneys' fees incurred pursuant to the attorney's fee provision contained in his employment agreement.

## II. Contemplated Motions

Each party may file a motion for summary judgment. Oettinger contends that the Covenant Agreement is unenforceable as a matter of law. mindSHIFT contends that the undisputed facts will establish contractual liability and that the Covenant Agreement is fully enforceable.

## III. The Prospect for Settlement

Both parties agree that early settlement discussions are warranted in this case.

---

[1] In May 2014, mindSHIFT commenced an action against Mr. Oettinger seeking preliminary injunctive relief, among other claims. The Delaware Court of Chancery denied mindSHIFT's request for a TRO. In June 2014, the Chancery Court issued a Preliminary Injunction in the Square 10 Litigation. But, the Court, in its decision, determined that mindSHIFT was not likely to succeed on its claim that Mr. Altobello or Mr. Sklodowski had violated the nonsolicitation or noncompetition provisions contained in their respective employment agreements.

DuaneMorris

The Honorable Paul G. Gardephe
January 29, 2015
Page 4

                                                Respectfully Submitted,

                                                Andrew T. Hahn, Sr.

ATH
Attachment
cc:    Steven G. Mintz, Esq.  (Via ECF w/attachment)
        Scott A. Klein, Esq. (Via ECF w/attachment)
        Thomas T. Loder, Esq. (Via ECF w/attachment)
        James H. Steigerwald, Esq. (Via ECF w/attachment)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

mindSHIFT Technologies, Inc.

                           Plaintiff(s),

- against -

Petter Oettinger

                           Defendant(s).

**CIVIL CASE MANAGEMENT PLAN
AND SCHEDULING ORDER**

<u>14</u>   Civ. <u>07555</u>   (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        After consultation with counsel for the parties, the Court adopts the following Civil Case Management Plan and Scheduling Order, in accordance with Federal Rules of Civil Procedure 16 and 26(f).

1. All parties **do** ☐ / **do not** ☑ consent to conducting further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). **[Check one.]**

2. This case **is** ☐ / **is not** ☑ to be tried to a jury. **[Check one.]**

3. No additional parties may be joined except with leave of the Court. Except for good cause shown, any motion to join additional parties must be filed within 30 days from the date of this Order.

4. A party may not amend its pleadings except with leave of the Court. Except for good cause shown, any motion to amend pleadings must be filed within 30 days from the date of this Order.

5. The parties must complete their initial disclosures under Federal Rule of Civil Procedure 26(a)(1) no later than 14 days from the date of this Order.

6. The parties must complete <u>fact</u> discovery no later than <u>June 5, 2015</u>.
   **[Insert date; typically 90 days from issuance of this scheduling order.]**

7. If all parties consent in writing, they may extend the following interim deadlines without application to the Court, provided that the parties complete all fact discovery by the date set forth in paragraph 6. Under this Order's interim deadlines, the parties must:

    a.    Serve initial requests for production of documents by February 19, 2015.
           **[Insert date; typically 2 weeks from issuance of this scheduling order.]**

    b.    Serve interrogatories by February 19, 2015. **[Insert date; typically 2 weeks out from issuance of this scheduling order.]**

    c.    Complete depositions of fact witnesses by June 5, 2015. **[Insert date; typically 90 days from issuance of this scheduling order .]**

           i.    Unless the parties agree or the Court so orders, the parties may not hold depositions until all parties have responded to initial requests for document production.

           ii.    There is no priority in deposition by reason of a party's status as plaintiff or defendant.

           iii.    Unless the parties agree or the Court so orders, non-party depositions must follow initial party depositions.

           iv.    Consistent with Federal Rule of Civil Procedure 30(d), the parties may not extend depositions beyond one business day without prior leave of the Court.

    d.    Serve requests to admit no later than May 20, 2015. **[Insert date; typically 75 days out from issuance of this scheduling order.]**

8.    The parties must complete <u>expert</u> discovery no later than July 8, 2015. **[Insert date; typically 30 days after end of fact discovery.]**

    a.    Every party-proponent that intends to offer expert testimony in respect of a claim – including any counterclaim, cross-claim or third-party claim – must make the disclosures required by Federal Rule of Civil Procedure 26(a)(2) by June 5, 2015. **[Insert date; typically 90 days from issuance of this order.]** Every party-opponent of such claim that intends to offer expert testimony in respect of such claim must make the disclosures required by Federal Rule of Civil Procedure 26(a)(2) by June 19, 2015. **[Insert date; typically 2 weeks later.]**

    b.    No party may offer expert testimony – whether designated as "rebuttal" or otherwise – beyond the scope of the opinions that the aforesaid disclosures cover, except with leave of the Court, application for which must be made no later than 7 calendar days after the latter of the dates specified in paragraph 8(a). The parties

   may depose all experts, but such depositions must occur within the time limit set forth for expert discovery in paragraph 8.

  c. Plaintiff(s) anticipate expert testimony concerning the following issue(s): Electronic Data Recovery and Spoliation

  d. Defendant(s) anticipate expert testimony concerning the following issue(s): Defendant currently does not anticipate any expert testimony.

10. No later than 14 days following the close of fact discovery, all counsel must meet face-to-face for at least one hour to discuss settlement.

11. Parties seeking to make post-discovery dispositive motions should submit a letter to the Court in accordance with Rule 4(A) of the Court's Individual Practices by June 12, 2015. **[Insert date; typically 1 week after the close of discovery.]** Opposition letters are due June 18, 2015. **[Insert date; typically 3 business days later.]**

12. Unless otherwise ordered by the Court, within 30 days from the date for the completion of discovery in a civil case or, if a party has filed a dispositive motion, then within 30 days of a decision resolving the motion, the parties shall submit to the Court for its approval a joint pretrial order prepared in accordance with the Court's Individual Practices and Federal Rule of Civil Procedure 26(a)(3).

13. Counsel for the parties have conferred and their present best estimate of the length of trial is: 3 days. **[Insert number of days.]**

14. At the close of discovery or, if a party has filed a dispositive motion, then within 30 days of a decision resolving the motion, the Court will set a Ready Trial Date. At any time on or after the Ready Trial Date, the Court may call the parties to trial upon 48 hours' notice. Therefore, counsel must notify the Court and their adversaries in writing of any potential scheduling conflicts – including, but not limited to, trials and vacations – that would prevent a trial at a particular time. Such notice must come before the Court notifies counsel of an actual trial date, not after counsel receives notification of the actual trial date. Counsel should notify the Court and all other counsel in writing, at the earliest possible time, of any scheduling problems involving out-of-town witnesses or other exigencies.

15. Where the parties resolve the case before the entry of judgment, they must submit a stipulation of discontinuance – signed by all parties – before the Court will remove the case from the trial calendar. If the parties settle within 48 hours of trial or the filing of a dispositive motion, they must immediately notify the Court of such settlement, and fax to the Court no less than 36 hours before their planned appearance, a stipulation of discontinuance, signed by all parties.

16.     The next pretrial conference is scheduled for _____. **[To be filled in by Court after consultation with parties.]**

        This ORDER may not be modified or the dates herein extended, except by further Order of this Court for good cause shown. Any application to modify or extend must be made in a written application in accordance with the Court's Individual Practices.

Dated: New York, New York
       _____

                                      SO ORDERED.

                                      _____
                                      Paul G. Gardephe
                                      United States District Judge